HABERBUSH & ASSOCIATES, LLP
DAVID R. HABERBUSH, ESQ., SBN 107190
VANESSA M. HABERBUSH, ESQ. SBN 287044
444 West Ocean Boulevard, Suite 1400
Long Beach, CA 90802
Telephone: (562) 435-3456
Facsimile: (562) 435-6335
E-Mail: vhaberbush@lbinsolvency.com

Attorneys for Reorganized Debtors and Debtors-in-Possession

## UNITED STATES BANKRUPTCY COURT

## CENTRAL DISTRICT OF CALIFORNIA, LOS ANGELES DIVISION

| | |
|---|---|
| In re | Lead Case No. 2:15-bk-11029-NB |
| R & J LIMITED PARTNERSHIP and JRJ LIMITED PARTNERSHIP, | (Jointly Administered with 2:15-bk-11040-NB) |
| Debtors and Debtors-in-Possession. | **Chapter 11** |

**MOTION FOR ORDER AUTHORIZING THE SALE OF THE ESTATE'S INTERESTS IN REAL PROPERTY LOCATED AT 675 EAST WARDLOW RD., LONG BEACH, CA, FREE AND CLEAR OF ALL CLAIMS, LIENS, AND INTERESTS PURSUANT TO 11 U.S.C. § 363**

**[Declarations in Support and Request for Judicial Notice Separately Filed]**

**Hearing Date**
Date:  To be set
Time:  To be set
Crtm:  1545
        255 E. Temple Street
        Los Angeles, CA 90012

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1

**Table of Contents**

**Page No.**

MOTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

MEMORANDUM OF POINTS AND AUTHORITIES . . . . . . . . . . . . . . . . . . . . . . . . . .  3

I.      INTRODUCTION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3

II.     FACTUAL BACKGROUND . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
        A.      Description of the Real Property . . . . . . . . . . . . . . . . . . . . . . . . . . . .  3
        B.      Difficulties of the Sale of the Real Property and Efforts Made to Sell the Real
                Property. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  5
        C.      Offer Tendered By Jeffery Lee Perry and Summary of its Terms . . . . . . . . .  8
        D.      Sale is in the Best Interests of the Bankruptcy Estate and Debtor's
                Creditors . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  9
        E.      Bayview's Lien on the Real Property and Additional Real Property Collateral  10
        F.      Bayview Has not Responded to Escrow's Payoff Demand. . . . . . . . . . . . .  13
        G.      Bayview's Security in the Real Property and the Additional Real Property
                Collateral. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13
        H.      Broker's Connections with Debtor. . . . . . . . . . . . . . . . . . . . . . . . . . . . .  13
        I.      The Buyer has No Prior Connections with the Debtor. . . . . . . . . . . . . . . . .  14
        J.      This Motion is Brought on an Emergency Basis to Ensure Debtor does not Lose
                the Buyer. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

III.    SUMMARY OF THE PROPOSED TERMS OF THE SALE OF THE REAL
        PROPERTY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

IV.     SECURED CLAIMS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  15

V.      ANTICIPATED TAX CONSEQUENCES OF THE SALE . . . . . . . . . . . . . . . . .  18

VI.     11 U.S.C. § 363(b)(1) ALLOWS THE DEBTOR-IN-POSSESSION TO SELL PROPERTY OF
        THE ESTATE IN THE ORDINARY COURSE OF BUSINESS WITH THE COURT'S
        APPROVAL AFTER NOTICE AND A HEARING; § 363(f) ALLOWS THE DEBTOR-IN-
        POSSESSION TO SELL ESTATE PROPERTY FREE AND CLEAR OF ANY INTEREST IN
        SUCH PROPERTY PROVIDED THE INTEREST HOLDER CONSENTS OR OTHER
        CONDITIONS APPLY . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  18
        A.      Any Secured Claimant That Does Not Timely Oppose a Proposed Sale of the
                Real Property Is Deemed to Have Consented to the Sale Pursuant to Section
                363(f)(2) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  21
        B.      Deference to Debtor's Business Judgment . . . . . . . . . . . . . . . . . . . . . . .  21
        C.      Fairness of Sale Price . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  22
        D.      Adequacy of Notice of the Sale . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

VII.    DISTRIBUTION OF PROCEEDS . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  23

VIII.   CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  25

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

**Table of Authorities**

**Case**                                                                                                    **Page No.**

*240 North Brand Partners, Ltd. v. Colony GFP Partners, L.P.* (*In re 240 North Brand Partners, Ltd.*), 200 B.R. 653 (9th Cir. B.A.P. 1996). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Comm. of Equity Sec. Holders v. Lionel Corp.* (*In re Lionel Corp.*), 722 F.2d 1063 (2d Cir.1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*Hargrave v. Twp. of Pemberton* (*In re Tabone, Inc.*), 175 B.R. 855 (Bankr. D. N.J. 1994). . . . . .   21

*In re Beker Industries Corp.*, 63 B.R. 474 (Bankr. S.D. N.Y. 1986). . . . . . . . . . . . . . . . . . . . . . . .   19

*In re Borders Grp., Inc.*, 453 B.R. 459 (Bankr. S.D. N.Y. 2011). . . . . . . . . . . . . . . . . . . . . . . . . .   21

*In re Buffalo Coal Co.*, 2006 WL 3359585 (Bankr. N.D. W. Va. Nov. 15, 2006). . . . . . . . . . . . .   21

*In re Consol. Auto Recyclers, Inc.*, 123 B.R. 130 (Bankr. D. Me. 1991) . . . . . . . . . . . . . . . . . . .   21

*In re Ernst Home Ctr., Inc.*, 209 B.R. 974 (Bankr. W.D. Wa 1997) . . . . . . . . . . . . . . . . . . . . . . .   18

*In re Global Crossing Ltd.*, 295 B.R. 726 (Bankr. S.D. N.Y. 2003). . . . . . . . . . . . . . . . . . . . . . . .   21

*In re Hatfield Homes, Inc.*, 30 B.R. 353 (Bankr. E.D. Pa.1983). . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*In re James*, 203 B.R. 449 (Bankr. W.D. Mo. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*In re Milford Grp., Inc.*, 150 B.R. 904 (Bankr. M.D. Pa. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . .   20

*In re R Star Rests., Inc.*, 2010 WL 3329814 (Bankr. C.D. Cal. June 29, 2010). . . . . . . . . . . . . .   21

*In re Terrace Gardens Park P'ship*, 96 B.R. 707 (Bankr. W.D. Tex. 1989). . . . . . . . . . . . . .   19, 20

*In re Wilde Horse Enterprises, Inc.,* 136 B.R. 830 (Bankr. C.D. Cal.1991). . . . . . . . . . . . . . . . .   19

*Matter of Rouse*, 54 B.R. 31 (Bankr. W.D. Mo.1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   19

*Romley v. Sun Nat'l Bank* (*In re Two S Corp.*), 875 F.2d 240 (9th Cir. 1989). . . . . . . . . . . . . . . .   22

*The Dai-Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp.* (*In re Montgomery Ward Holding Corp.*), 242 B.R. 147 (D. Del. 1999). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*The Official Comm. Of Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV Corp.* (*In re Chateaugay Corp.*), 973 F.2d 141 (2d Cir. 1992). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   21

*U.S. v. Goodstein*, 883 F.2d 1362 (7th Cir.1989). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   18

*Walter v. Sunwest Bank* (*In re Walter*), 83 B.R. 14 (9th Cir. B.A.P. 1988). . . . . . . . . . . . . . . . .   18

**Statutes**

11 U.S.C. § 101. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .   15

11 U.S.C. § 363. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 2, 15, 16, 18-21, 25

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

11 U.S.C. § 506. ........................................................... 16, 19, 20

11 U.S.C. § 1107. ............................................................... 18

California Civil Code § 2943. ..................................................... 13

California Commercial Code § 9515 ............................................ 17, 18

**Other Authorities**

*Black's Law Dictionary* 536 (5th ed. 1979). ......................................... 22

Collier on Bankruptcy (15th ed.). ............................................... 20, 21

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## MOTION

**TO THE HONORABLE NEIL BASON, UNITED STATES BANKRUPTCY JUDGE; THE OFFICE OF THE UNITED STATES TRUSTEE; BAYVIEW LOAN SERVICING; AND ALL PARTIES IN INTEREST AND THEIR COUNSEL OF RECORD:**

R&J Limited Partnership, Debtor and Debtor-in-Possession herein ("Debtor"), hereby moves this Court for an order authorizing the sale of the estate's interests in the real property located at 675 East Wardlow Rd., Long Beach, CA ("Real Property"), free and clear of all claims and liens pursuant to 11 U.S.C. § 363(f) (the "Motion" and/or "Motion to Sell").

This Motion is based upon the following Memorandum of Points and Authorities, the concurrently-filed Declarations of Edward Renteria, Lynn Vavrek, Dawn Coulson, and Vanessa M. Haberbush, the concurrently-filed Request for Judicial Notice in Support of the Motion, the documents and pleadings on file in this case, and such other and further matters as may be presented prior to or at the hearing on the Motion.

By this Motion, Debtor requests the following relief: Authorizing Debtor to sell and to assign, free and clear of all claims, liens, and interests pursuant to Section 363(f) of Title 11 of the United States Code (the "Bankruptcy Code"), the bankruptcy estate's interests in the Real Property to Jeffery Lee Perry, or the bidder with the highest or otherwise best bid for the Real Property in the auction to be conducted by Debtor at the hearing on the Motion.

Debtor believes that the Court's approval of this Motion to Sell is in the best interests of Debtor's creditors. The offer to purchase the Real Property made by Jeffery Lee Perry represents the highest or otherwise best offer received by Debtor. Debtor has determined that the best means for Debtor to obtain the most favorable recovery from the sale of the Real Property is for Debtor to conduct an auction of the Real Property, subject to open bidding with such auction scheduled to be conducted at the hearing on the Motion to Sell.

While Court authority is not required for Debtor to sell the Real Property pursuant to the terms of the confirmed Joint Chapter 11 Plan of Both R&J Limited Partnership and JRJ Limited Partnership Dated December 13, 2016 (the "Plan"), Debtor may seek such authority and does so in order to allow the sale to close.

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    **WHEREFORE**, Debtor respectfully requests the Court enter an order granting to Debtor the

2    following relief:

3        1.    Authorizing Debtor to sell and to assign, free and clear of all claims, liens, and interests

4    pursuant to Section 363(f) of the Bankruptcy Code the bankruptcy estate's interests in the Real Property

5    to Jeffery Lee Perry, or the bidder with the highest or otherwise best bid for the Real Property in the

6    auction to be conducted by Debtor at the hearing on the Motion;

7        2.    Authorizing the distribution of proceeds; and

8        3.    Granting to Debtor such other and further relief as this Court deems just and appropriate

9    under the facts and circumstances of this case.

10        Respectfully submitted,

11        HABERBUSH & ASSOCIATES, LLP

12

13

Dated: May 8, 2019    By:_____

14        VANESSA M. HABERBUSH, ESQ., Attorneys for
    Debtor and Debtor-in-Possession

15

16

17

18

19

20

21

22

23

24

25

26

27

28

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.    INTRODUCTION

Debtor brings this Motion to sell the Real Property on an emergency basis because it is likely to lose the proposed buyer of the Real Property if the sale is not closed in the very near future. Debtor and the proposed buyer entered into a Purchase Agreement (defined hereinbelow) on or about March 1, 2019, with an expectation that the sale would be closed in approximately 40 days. While the parties understood that, due to the numerous complexities surrounding the sale of the Real Property, that the closing may take longer, it is now over 60 days after the Purchase Agreement was entered and the proposed buyer has indicated that it will wait no longer to close the sale. Debtor seeks to close the sale for the benefit of the estate and its creditors.

As detailed below, Debtor has taken extensive actions to try to close the sale but its secured creditor, Bayview Loan Servicing, has been unresponsive. For the reasons set forth below, Debtor has grounds to sell the Real Property, Debtor can show that Bayview Loan Servicing is adequately protected, and Debtor has shown that this Court should close the sale of the Real Property so that the sale is not lost.

### II.    FACTUAL BACKGROUND

#### A.    <u>Description of the Real Property</u>

The Real Property consists of four parcels with two of the four parcels zoned for commercial and the balance zoned for low density multi-family. The residential lot is 14,000 square feet and the commercial lot is 14,863 square feet. Declaration of Edward Renteria ("Renteria Declaration") ¶3. The north boundary of the Real Property is contiguous to a parcel with significant oil production and tanks which are visible above the fence separating the Real Property from the contiguous oil-producing parcel. Renteria Declaration ¶4. The west boundary abuts an alley that separates the Real Property from the adjacent lot, on which exists a Tune & Lube operation. Renteria Declaration ¶5.

The adjacent uses, coupled with the market in general, has resulted in no interest from multi-family developers. Renteria Declaration ¶6. To develop the property, it is likely that a zone change for the north two lots will be required. While not impossible, it does take time, money and expertise. A zone change will require the City of Long Beach (the "City" and/or "Long Beach") to be comfortable

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    with the proposed development.  Renteria Declaration ¶7. Providing the City comfort will require at

2    least a Preliminary Site Plan and an elevation report.  It may also require a Conditional Use Permit

3    ("CUP").  It is likely that other items will be required.  To obtain a CUP from the City, it will take no

4    less than 90 days and will cost $15,000 or more.  Renteria Declaration ¶8.

5         Due to the City's concerns, it will take a fair amount of up-front investment for a developer to

6    meet the City's requirements for the zone change and resultant preliminary site-plan-approval for the

7    development.    Absent development, the Real Property has limited value and appeal. Renteria

8    Declaration ¶¶9-10.

9         The Real Property is subject to first deed of trust securing obligations owed to Bayview Loan

10   Servicing ("Bayview") in the sum of $1,040,684.37 as of December 29, 2014 according to the recorded

11   Notice of Trustee's Sale, a true and correct copy of which is attached to the Renteria Declaration as

12   Exhibit "1."[1] The debt is secured by the first deed of trust against the Real Property and is also

13   collateralized by other real properties of Debtor, located at 640 East Wardlow Rd., Long Beach, CA,

14   3373 Lime Avenue, Signal Hill, California, and 3355 Lime Avenue, Signal Hill, California, all of which

15   are contiguous and shall hereinafter collectively be described as the "Additional Real Property

16   Collateral." As described more fully hereinbelow, an offer for the purchase of the Real Property will

17   produce net proceeds of approximately $843,319.30, which shall be paid directly to Bayview. After the

18   sale of the Real Property, the any additional indebtedness owed to Bayview will continue to be secured

19   by the Additional Real Property Collateral to the same extent, degree, and validity as it currently

20   attaches to both the Real Property and the Additional Real Property Collateral. Renteria Declaration ¶11.

21        Debtor's real estate broker, Edward Renteria of Pacific West Associates[2] personally inspected

22   and conducted a market survey of the Additional Real Property Collateral and, using a market

23   comparison approach, have arrived at an opinion of its value. Using comparable sales in and about

24   Southern California and with specific emphasis on the Long Beach and Signal Hill area, he arrived at

25   

26   ———————————
     [1]     As discussed below, the amount due to Bayview is currently disputed and unknown. The
     amount could be as low as $58,405.72 and potentially as high as $506,747.83.

27   [2]     No application for employment Edward Renteria and Pacific West Associates as brokers
28   in this Chapter 11 bankruptcy case has not been filed with the Court due to the confirmation of Plan;
     due to the confirmation of the Plan, employment of professionals with this Court is no longer required.

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1  an opinion of the value for the Additional Real Property Collateral of at least $1,000,000, but likely

2  more.[3] Renteria Declaration ¶12.

3  **B.**    **Difficulties of the Sale of the Real Property and Efforts Made to Sell the Real**

4          **Property.**

5          On or about August 21, 2012, O'Healy Commercial Real Estate Services (Debtor's prior broker)

6  was granted a listing to market the Real Property through an Exclusive Right to Represent Owner for

7  Sale or Lease of Real Property.  The commercial lots are listed at $37.50 per square foot and the

8  residential lots are listed at $32.50 per square foot. Declaration of Lynn Vavrek ("Vavrek Declaration")

9  ¶4.

10         There was little or no interest in the Real Property and very few inquiries between the listing date

11  and January 31, 2014. On January 31, 2014, Debtor received a fax directly from a broker purportedly

12  representing a prospective buyer indicating interest that Debtor suspects was an opening to seek a

13  listing.  The owner sent it to Debtor, and O'Healy Commercial Real Estate Services (Debtor's then-

14  broker) responded on Debtor's behalf on February 3, 2014. Vavrek Declaration ¶5.

15         On June 25, 2014, Debtor received a written offer of $750,000 with significant contingencies,

16  which includes seller resolution of environmental issues and oil well re-abandonment. The negotiations

17  related to this offer fell through. Vavrek Declaration ¶6.

18         On August 14, 2014, Debtor received a draft letter of intent from Market Street Development

19  to purchase the Real Property. It had a medical tenant that wanted to occupy a "build to suit" office

20  building.  Market Street Development offered $1,012,392 for the purchase of the Real Property. The

21  material points of this offer included that Market Street Development would advance funds prior to the

22  close of escrow to perform all the environmental testing and reports and to re-abandon the wells.  The

23  full terms of the sale were set forth in the motion to sell the Real Property to Market Street Development

24  (the "First Motion to Sell") filed on or about March 30, 2015. *See* Request for Judicial Notice filed in

25  support of this Motion ("RJN") ¶1.  After objections by creditors and numerous continuances, on

26

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

27  ———————————

28      [3]    Mr. Renteria seeks to list the Additional Real Property Collateral for $1,475,000, but recognizes that due to the various environmental issues and contingencies related to the Additional Real Property Collateral, it may not ultimately not sell for this amount. Renteria Declaration ¶12.

1    October 9, 2015, the Court granted the First Motion to Sell. RJN ¶2. Unfortunately, this sale never

2    closed because the contingencies set forth in the sale agreement (namely related to the environmental,

3    parking, and zoning issues) were not satisfied. Therefore, in 2016, this sale was terminated. Vavrek

4    Declaration ¶7.

5        Since the termination of the proposed sale of the Real Property to Market Street Development,

6    Debtor has taken many actions to sell the Real Property.[4] While Debtor has detailed these actions in its

7    post-confirmation status reports with the Court, these actions were as follows: Foasberg Laundry &

8    Cleaners, Inc. ("Foasberg")[5] and Debtor also explored alternatives to locate buyers for the business

9    operations and all of its real properties, either together or separately. Further, Debtors have consulted

10    with different brokers to try to see what alternatives have the most potential for locating buyers and are

11    taking actions to pursue alternatives that appear reasonable under the circumstances. O'Healy

12    Commercial aggressively marketed the Real Property until December 1, 2017, at which time his listing

13    agreement expired. Debtor spoke with several different brokers to see if they might have different ideas

14    for selling the Real Property and/or the Additional Real Property Collateral. At this time, Debtor still

15    used O'Healy Commercial on a non-exclusive basis, but expanded the use of brokers. On or about

16    January 21, 2018, Edward Renteria and Pacific West Associates were employed to list the Real Property

17    on a non-exclusive basis. This expansion of brokers has resulted in interest for the Real Property and

18    the Additional Real Property Collateral. In the time from about January 2018 to the present, Debtor

19    received additional interest in the Real Property and several proposals for its purchase. Due to Edward

20    Renteria's success, on or about December 28, 2018, Debtor and Pacific West Associates entered into

21    an Exclusive Right to Represent Owner for Sale or Lease of Real Property, a true and correct copy of

22    which is attached to the Renteria Declaration as Exhibit "2". Due to the unique situation surrounding

23    _____

24    [4]    Debtor has also taken numerous actions to sell the Additional Real Property Collateral,
but does not detail those actions here. Debtor's actions taken in relation to the Additional Real Property
25    Collateral are detailed in Debtor's post-confirmation status reports on file with the Court. Vavrek
Declaration ¶8.

26    [5]    Foasberg is the tenant of Debtor's real properties. Foasberg is affiliated with both Debtor
27    and JRJ Limited Partnership. Foasberg is a dry cleaning facility that experienced its own cash flow
difficulties, which has resulted in its failure to pay rent for several months. Since the entry of the
28    Confirmation Order, Foasberg took actions to locate buyers for its operations and successfully sold the
operations at the real property owned by JRJ Limited Partnership. Vavrek Declaration ¶8.

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

the Real Property (which are discussed in detail below), Debtor was unable to pursue these offers until the offer obtained by Edward Renteria.  Vavrek Declaration ¶8; Renteria Declaration ¶13.

The reason for the difficulty in listing and sell the Real Property relates to the environmental contamination and zoning issues relating to the Real Property. These difficulties are as follows:

1.    Re-Abandoning Oil-Wells.  There are two abandoned oil wells on the Real Property that date back to the 1920s; both of these abandoned oil wells must be re-abandoned to current standards to allow *any* development on a site with previously abandoned wells.  Debtor's educated estimate is that the re-abandonment the oil wells will cost around $100,000 each.  Perhaps the reduced price of oil, and reduced demand for drilling rigs will make it possible to negotiate a lower price;

2.    Possible Additional Clean-Up: There are two "test" wells on this Real Property that the California State Water Board required to be placed on the Real Property on account of suspected contamination from a former gas station nearby where a cleanup is underway.  Those test wells, which Mr. Renteria believes are tested quarterly, have begun to detect perchloroethylene ("PCE") at levels which might require clean-up action by Debtor.  PCEs are commonly used at dry cleaners. Debtor's current tenant operates and its old tenant (Foasberg) both operated a dry cleaners on the opposite side of Wardlow Road from the Real Property;

3.    Install vapor barrier pending environmental testing.  While SCS Engineers (the "Environmental Consultant") who performed a preliminary investigation on the Real Property stated that in addition to possible cleanup, the testing might indicate that a "vapor barrier" must be installed beneath any building constructed. The Environmental Consultant suggested a $250,000 budget to investigate, remediate and re-abandon wells.  Environmental budgets tend to be open ended and one might view this cost estimate to be an educated guess;

4.    Obtaining geo-technical reports.  When vacant land, such as the Real Property, is to be developed, geo-technical reports must be obtained to determine if the site is properly compacted for the intended development.  These reports also determine if there is non-native soil and foreign material buried on the site; and

5.    Obtaining District Approval.  This Real Property is located in California Heights, a historic Long Beach neighborhood.  California Heights has the most active of all the homeowners'

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1  associations in the City. Long Beach has nine Council Districts. Each District elects its own Council

2  person. Consequently, these powerful homeowners' associations have significant influence over their

3  Council person's vote. It will take many community meetings and investment in presentation materials

4  to overcome the natural resistance residents have toward any development close to where they live.

5  Development proposals need to be carefully crafted and significant time must be spent with the Planning

6  Department, the Council office, and the officers of the association. This process is not for the faint of

7  heart, and patient response after making quality presentation is required. Absent the need for the zoning

8  change, the process would be much easier. Because the Zoning issue entails public meetings, skill and

9  patience are required. Renteria Declaration ¶14.

10      Ordinarily, consummating a transaction with the specific complications outlined above requires

11  the Seller to perform all aspects of remediation and advance the costs, which will likely be in the

12  $250,000 range, but could be higher, and to do so prior to the close of escrow. These costs are expected

13  to include performing Phase II environmental tests and paying all expenses related to the re-

14  abandonment of the two oil wells. Debtor does not have the funds to pay for these expenses. Due to the

15  offer received by Jeffery Lee Perry, Debtor would not need to pay for any of these items and, instead,

16  the buyer would be solely responsible for them after the sale has closed. Renteria Declaration ¶15.

17      **C.**    **Offer Tendered By Jeffery Lee Perry and Summary of its Terms**

18      On March 1, 2019, a Vacant Land Purchase Agreement and Joint Escrow Instructions (the

19  "Purchase Agreement") was tendered by Jeffery Lee Perry to Debtor offering $935,000 for the purchase

20  of the Real Property. A true and correct copy of the Purchase Agreement is attached to the Renteria

21  Declaration as Exhibit "3." The Purchase Agreement was accepted by Debtor. The material points in

22  the Purchase Agreement are:

23      a.    The Real Property be in escrow at the asking price;

24      b.    Jeffery Lee Perry will pay all costs to remove or cap any oil wells or underground

25  storage tanks; and

26      c.    Jeffery Lee Perry will take the Real Property "as is." Renteria Declaration ¶16.

27      The Purchase Agreement also indicates that the close of escrow will occur within 40 days after

28  the entry into the Purchase Agreement but that the parties understand that:

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1   This is a short sale. The buyer is aware that this contract price is being accepted under
2   final approval of the lender and lien holder. The time periods for buyer to conduct their
    investigations will commence once written approval is provided to the seller, buyer, and
3   escrow. *Additional days will be required to close escrow both parties are aware and agree.*

4   Purchase Agreement (Exhibit 3 to the Renteria Declaration) ¶8 (emphasis added); *see also* Renteria

5   Declaration ¶17.

6       While both Debtor and Buyer Jeffery Lee Perry know that the sale would take some time to

7   complete, it has since been over 60 days from the entry of the Purchase Agreement, and Jeffery Lee

8   Perry has indicated that it will terminate the sale if the escrow is not closed very soon.  Renteria

9   Declaration ¶27; Vavrek Declaration ¶9.

10      **D.    Sale is in the Best Interests of the Bankruptcy Estate and Debtor's Creditors**

11      Although Debtor has received a few other queries while waiting for the lender release, none have

12  shown serious interest in purchasing the Real Property or have the ability to actually manage the

13  elements required to complete a transaction like this one except for the failed proposed sale to Market

14  Street Development.  Renteria Declaration ¶18; Vavrek Declaration ¶10.

15      Jeffery Lee Perry has expressed serious interest and the ability to actually manage the many

16  complexities involved in completing the necessary steps to close the sale of the Real Property. Further,

17  he is willing to close the sale and take the actions necessary to comply with environmental laws after

18  the sale has closed. This removes the cost from Debtor and allows Debtor's secured creditor to be paid.

19  Renteria Declaration ¶19; Vavrek Declaration ¶11.

20      Of significance is the willingness of Jeffery Lee Perry to take the Real Property "as is" and

21  advance all costs required for the investigation and remediation of the Real Property *after* the sale has

22  closed. This is a significant risk and cost Jeffery Lee Perry is willing to undertake, especially with

23  respect to the difficulties in accomplishing a rezoning and obtaining a conditional use permit with

24  respect to the Real Property described hereinabove. Renteria Declaration ¶20; Vavrek Declaration ¶11.

25      It is extraordinarily unusual that a buyer would be willing to take the responsibility for such a

26  daunting project and to advance the money to bring it to conclusion.  Debtor does not have the funds

27  to do the testing, the cleanup (if required), or the re-abandonment the wells. Most buyers would find the

28  underlying risk of vapor from the PCE contamination to be not acceptable.  Mr. Renteria has no

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    confidence that if the Jeffery Lee Perry transaction is not completed that Debtor could come close to its

2    terms with any other buyer.  As demonstrated by the Vavrek Declaration, Debtor marketed this property

3    without a credible offer for almost *five years* before obtaining this offer.  Renteria Declaration ¶21;

4    Vavrek Declaration ¶12.

5        **E.**    **Bayview's Lien on the Real Property and Additional Real Property Collateral.**

6        Bayview holds a first position lien on the Real Property; that lien is cross-collateralized with the

7    Additional Real Property Collateral.  As demonstrated by Bayview's proof of claim filed in Debtor's

8    bankruptcy, the amount of Bayview's lien was (as of the date of the Petition) $954,145.76. A true and

9    correct copy of Bayview's Proof of Claim, filed as Claim Number 2 on the Court's claim register, is

10   attached as Exhibit "3" to the RJN.  However, since confirmation of the Plan, it has become apparent

11   that Bayview is claiming substantially more than what was asserted in its proof of claim. This first

12   became apparent when JRJ Limited Partnership ("JRJ") (JRJ, collectively with Debtor, "Debtors")

13   attempted to sell its real property located at 3337 E. Broadway, Long Beach, CA 90803 (the "Broadway

14   Property").  Vavrek Declaration ¶13.

15       On or about May 16, 2018, JRJ closed on the sale of the Broadway Property.  Through that sale,

16   Bayview received $793,879.59.  This was substantially more than the amount asserted in Bayview's

17   proof of claim filed in Debtor's bankruptcy, which asserted an amount of $607,112.07.  A true and

18   correct copy of Bayview's Proof of Claim, filed as Claim Number 6 on the Court's claim registrer, is

19   attached as Exhibit "4" to the RJN. While JRJ repeatedly asked for an accounting prior to the closing

20   of the sale of the Broadway Property to try to evaluate Bayview's demand, JRJ did not receive one until

21   long after the Broadway Property was sold.  A true and correct copy of the accounting JRJ received

22   from Bayview (the "JRJ Accounting") is attached as Exhibit "5" to the Declaration of Vanessa M.

23   Haberbush ("Haberbush Declaration").  JRJ allowed the sale to close while reserving all rights to object

24   to the amounts claimed by Bayview in relation to that sale.  Vavrek Declaration ¶14; Haberbush

25   Declaration ¶5.

26       On or about June 22, 2018, Bayview's counsel provided an accounting to show the amounts

27   purportedly due from JRJ, to which JRJ disputed. Haberbush Declaration ¶5. After reviewing the JRJ

28   Accounting, JRJ detailed its objections to the amount asserted by Bayview. First, JRJ was unable to

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    reconcile the amounts demanded from escrow ($793,879.59) with the Proof of Claim filed by Bayview.

2    Second, JRJ was unable to reconcile the allowed charges and payment activity from the petition date

3    of January 23, 2015, to the Broadway Property sale date of May 16, 2018. Finally, some of the charges

4    directly conflict with the terms of the Plan and, as such, must be corrected. These conflicts with the

5    terms of the Plan were as follows:

6        1.    In relation to the interest calculated by Bayview, the interest was calculated incorrectly

7    because it did not consider the terms of the Plan. Bayview's calculation of interest was at 11%, while

8    the JRJ Proof of Claim clearly indicated an interest rate of 2%. More importantly, however, it appears

9    that interest was charged at a rate of 11% *after* the Effective Date of the Plan even though the Plan

10   clearly sets forth the rate of interest that will be paid to Bayview and JRJ made those payments as

11   required. As set forth in Exhibit H to the Plan, JRJ was to pay 7.5% interest to Bayview (in the amount

12   of $3,794.45 per month), which JRJ did until the Broadway Property was sold. *See* RJN at Exhibit "5"

13   (Plan at Exhibit H, page 18, lines 17-19). No further interest accrued during that time period.

14   Therefore, the interest asserted by Bayview is overstated and claimed in error. Further, the foreclosure

15   on the Broadway Property was rescinded by virtue of the terms of the Plan. *See* RJN at Exhibit "5"

16   (Plan at Exhibit H, page 18, line 1; page 18, footnote 4). Moreover, the Plan specifically stated:

17       The Plan makes no modifications to Bayview's note, except in relation to reinstating the
         notes as discussed herein. Therefore, interest and other fees may accrue prior to full
18       payment of Bayview's claim. . . .On the Effective Date, all loans secured by the
         properties will be reinstated and no longer be in default or in foreclosure.
19

20   *See* RJN at Exhibit "5" (Plan at Exhibit H, page 28, lines 14-19). This means that the loan was placed

21   in good standing and only ordinary interest could possibly accrue post-confirmation. Because the Plan

22   placed Bayview's claim in good standing, any interest rate charged must be in accordance with the terms

23   of the Plan. Because JRJ paid a rate of interest in excess of the note terms pursuant to the terms of the

24   Plan and paid all required escrow payments to Bayview, no fees (other than attorneys' fees) or interest

25   could have accrued from January 10, 2017, to June 1, 2018. Therefore, amounts paid post-confirmation

26   were in excess of what JRJ owed to Bayview pursuant to the terms of the Plan and the interest asserted

27   by Bayview was in error.

28       2.    For similar reasons to the first objection, Bayview improperly asserted default interest

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    at a rate of 28%. As stated above, the Plan specifically rescinded the foreclosure proceedings and any

2    assertion of default rates of interest is improper. The only interest that could accrue from the Effective

3    Date to the date of the sale of the Broadway Property is that set forth in the Plan, which was paid in full

4    by JRJ. Therefore, the interest asserted was in error.

5        3.    JRJ could not determine the amount of corporate advances from the Closing Statement

6    and the JRJ Accounting. JRJ further assumes, for purposes of this Motion, that arithmetic is correct.

7    Even with these assumptions the fees asserted on the JRJ Accounting were inappropriately charged

8    under the terms of the Plan. The asserted fees include BPO fees, foreclosure costs, and title costs all

9    charged after the Petition Date. Because these were inappropriately charged, the difference between

10    JRJ Accounting and the Closing Statement is what JRJ assumes are the legal fees and the only amount

11    that is owing under the terms of the Plan. Vavrek Declaration ¶15.

12        Based on these objections, JRJ asserts that it overpaid Bayview in the amount of $149,194.50

13    in connection with the sale of the Broadway Property. Vavrek Declaration ¶15.

14        On or about July 13, 2018, Debtor received an accounting from Bayview indicating the amount

15    that Bayview indicated was due to it from Debtor. A true and correct copy of the accounting Debtor

16    received from Bayview (the "Debtor Accounting") is attached as Exhibit "6" to the Haberbush

17    Declaration. Again, Debtor, like JRJ, believed the amount to be vastly overstated. This accounting

18    indicated that $1,350,067.13 was due from Debtor to Bayview. Debtor's objections related to the

19    calculation of Bayview's claim against Debtor are substantively the same as those set forth for JRJ.

20    Based on these objections, Debtor asserts that Bayview's claim is overstated by $448,342.11. Vavrek

21    Declaration ¶16; Haberbush Declaration ¶6.

22        If Debtors' objections are sustained, the total owing to Bayview is $901,725.02; if Bayview's

23    calculations are correct, the total owing to Bayview is $1,350,067.13. Vavrek Declaration ¶17.

24        Debtors' counsel informed Bayview's counsel of this dispute by a letter dated October 19, 2018.

25    This letter was sent with the hope that the disputes between the parties could be resolved consensually.

26    Bavview did not respond to this letter until April 1, 2019, at which time Bayview's counsel sent a letter

27    indicating that it disputed these calculations. To date, this dispute has not been resolved but Debtor

28    seeks to sell the Real Property at this time with the disputes between Debtor and Bayview to be resolved

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1   at a later time.  Haberbush Declaration ¶7.

2       **F.**    **Bayview Has not Responded to Escrow's Payoff Demand.**

3       After Debtor entered into the Purchase Agreement, Debtor and its counsel have been trying to

4   negotiate with Bayview to allow the sale to close. Further, Debtor has been taking all actions necessary

5   to try to close the sale. This included having escrow opened and a payoff demand sent to Bayview.  On

6   or about April 2, 2019, escrow sent a payoff demand to Bayview. To date, Bayview has failed to provide

7   a payoff demand to escrow despite the requirement that Bayview timely provide such a payoff demand

8   within 21 days, as required by California Civil Code § 2943(b)(1). Bayview's actions are jeopardizing

9   this sale of Debtor's Real Property. Vavrek Declaration ¶18; Haberbush Declaration ¶8.  Failure to

10   provide any payoff demand, even one that Debtor believes is overstated, shows that Bayview is

11   hindering the closing of the sale.

12       **G.**    **Bayview's Security in the Real Property and the Additional Real Property**

13           **Collateral.**

14       Upon completion of the sale, Bayview will be paid approximately $843,319.30 on account of

15   its lien and will have a first priority lien on the Additional Real Property Collateral valued at over

16   $1,000,000, which provides a significant equity cushion to Bayview.  If Debtors are unsuccessful in

17   their objection to Bayview's claims, the largest claim Bayview will have against the Additional

18   Property Collateral after the sale of the Real Property will be a claim of $506,747.83, which is a debt

19   to value ratio of no more than 50.67%, leaving an equity cushion of 49.33%. However, if Debtors are

20   completely successful in their objection to Bayview's claims, Bayview's claim will be reduced to

21   $58,405.72, which is a debt to value ration of no more than 5.84%, leaving an equity cushion of 94.16%.

22   Renteria Declaration ¶22.

23       **H.**    **Broker's Connections with Debtor.**

24       Edward Renteria of Pacific West Associates has the following connections with Debtor: It served

25   as the real estate broker for Debtor's principal, Richard Foasberg, in connection with the sale of Mr.

26   Foasberg's personal residence approximately four years ago. Further, Mr. Renteria has listed the Real

27   Property for over one year, speaking with over 200 individuals who expressed interest in the purchase

28   of the Real Property. Mr. Renteria will also represent Debtor in connection with the sale of the

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

      THIS DOCUMENT PREPARED ON RECYCLED PAPER

1  Additional Real Property Collateral. Renteria Declaration ¶23.

2  Finally, in connection with this sale, Mr. Renteria represents both the buyer, Jeffery Lee Perry,

3  and the seller, Debtor. This is disclosed and agreed to by both parties as indicated by the Disclosure

4  Regarding Real Estate Agency Relationship, attached as Exhibit "4" to the Renteria Declaration.

5  Renteria Declaration ¶24.

6  **I.    The Buyer has No Prior Connections with the Debtor.**

7  Jeffery Lee Perry has no connections with the Debtor other than he has offered to purchase the

8  Real Property. Other than the Purchase Agreement, Debtor has no connection with Jeffery Lee Perry.

9  Vavrek Declaration ¶19.

10  **J.    This Motion is Brought on an Emergency Basis to Ensure Debtor does not Lose the**

11  **Buyer.**

12  Because Jeffery Lee Perry has made very clear that he wishes the sale to close and will not wait

13  longer for the sale to close, Debtor has brought this Motion on an emergency basis. Mr. Renteria has

14  attempted to contact Bayview daily to attempt to close the sale of the Real Property but has been

15  unsuccessful in closing the sale. Debtor's counsel has also repeatedly requested a status from Bayview's

16  attorney but has not yet received one.  Renteria Declaration ¶24; Haberbush Declaration ¶8; Vavrek

17  Declaration ¶20.

18  The buyer has made clear that he is impatient with the closing of the sale and will terminate the

19  Purchase Agreement if the sale is not closed in the very near future. Mr. Renteria and Debtor have been

20  working very closely with Jeffery Lee Perry to keep this sale alive as long as possible but this sale could

21  be lost any day.  Therefore, because Debtor anticipates that it will lose its buyer if the sale is not closed

22  in the very near future, Debtor brought this Motion on an emergency basis.  Renteria Declaration ¶26;

23  Haberbush Declaration ¶9; Vavrek Declaration ¶21.

24  **III.    SUMMARY OF THE PROPOSED TERMS OF THE SALE OF THE REAL PROPERTY**

25  By this Motion, Debtor seeks approval of the sale of the Real Property on the following terms:

26  **Terms of Offer for the Purchase of the Real Property**. On March 1, 2019, a Vacant Land

27  Purchase Agreement and Joint Escrow Instructions (the "Purchase Agreement") was tendered by Jeffery

28  Lee Perry to Debtor offering $935,000 for the purchase of the Real Property. The Purchase Agreement

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

was accepted by Debtor. The material points in the Purchase Agreement are:

        a.      The Real Property be in escrow at the asking price;

        b.      Jeffery Lee Perry will pay all costs to remove or cap any oil wells or underground storage tanks; and

        c.      Jeffery Lee Perry will take the Real Property "as is." Renteria Declaration ¶16.

The Purchase Agreement also indicates that the close of escrow will occur within 40 days after the entry into the Purchase Agreement but that the parties understand that:

> This is a short sale. The buyer is aware that this contract price is being accepted under final approval of the lender and lien holder. The time periods for buyer to conduct their investigations will commence once written approval is provided to the seller, buyer, and escrow. Additional days will be required to close escrow both parties are aware and agree.

Purchase Agreement (Exhibit "3" to the Renteria Declaration) ¶8; *see also* Renteria Declaration ¶17.

While both Debtor and Jeffery Lee Perry knew that the sale would take some time to complete, it has since been over 60 days from the entry of the Purchase Agreement, and Jeffery Lee Perry has indicated that it will terminate the sale if the escrow is not closed very soon. Renteria Declaration ¶27; Vavrek Declaration ¶21.

The offer to purchase the Real Property by Jeffery Lee Perry is subject to a higher and better offer being made at the hearing on the Motion by any other party wishing to purchase the Real Property.

**Court Approval.** While Debtor seeks approval of the sale of the Real Property, if Bayview consents to the sale, Court authority to sell the Real Property is not required. *See* RJN at Exhibit "5" (Plan Exhibit H at page 7).

## IV.    SECURED CLAIMS

Debtor seeks authority to sell the Real Property, with appropriate findings by the Court, to the Jeffery Lee Perry or the Successful Bidder free and clear of all liens (as defined in 11 U.S.C. § 101(37)), claims (as defined in 11 U.S.C. § 101(5)), and interests (collectively, "Liens"), pursuant to 11 U.S.C. § 363(f). The Sale shall be free and clear of the Liens and the Liens shall attach to the proceeds of the sale to the same priority, extent, and validity as they now attach to the Real Property pursuant to 11 U.S.C. § 363(f). The following Liens encumber the Real Property:

        a.      <u>County of Los Angeles Tax Assessor for Real Property Taxes.</u> It is estimated that

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1  the total amount owed to the County will be for transfer taxes in the amount of approximately $1,028.50.

2  Vavrek Declaration ¶23(a).

3          b.    <u>Bayview.</u> The Real Property is subject to first deed of trust and a U.C.C.-1

4  financing statement securing obligations owed to Bayview in the sum of $1,040,684.37 as of December

5  29, 2014 according to the recorded Notice of Trustee's Sale.[6]  The debt is secured by the first deed of

6  trust against the Real Property and is also collateralized by the Additional Real Property Collateral. *All*

7  *net proceeds of the sale*, as discussed below, *shall be paid to Bayview and Bayview shall retain its lien*

8  *on the Additional Real Property Collateral.* The estimated net proceeds from the sale which will be paid

9  to Bayview is estimated to be $843,319.30. After completion of the sale, the balance of the loan owed

10  to Bayview will be in the sum of $58,405.72 to $506,747.83 (depending on the allowance of the

11  amounts claimed by Bayview) and Bayview shall retain a lien on the Additional Real Property

12  Collateral, which have an estimated value of no less than $1,000,000, to the same extent and validity

13  that it currently asserts without waiving any of Debtor's rights to object to the amount claimed by

14  Bayview.  Vavrek Declaration ¶23(b).

15          c.    <u>Epps & Coulson, LLP.</u> The Real Property is subject to a deed of trust securing

16  obligations owed to Epps & Coulson, LLP in the sum of $250,000. Vavrek Declaration ¶23(c). Because

17  the value of the Real Property is less than the value of Bayview's lien, Epps & Coulson, LLP's claim

18  of lien is totally unsecured pursuant to 11 U.S.C. § 506(a)(1) as to the Real Property.  Therefore, this

19  claim is subject to a bona fide dispute as to whether it secured by any value in the Real Property, and

20  the Court may approve the sale free and clear of this lien pursuant to 11 U.S.C. § 363(f).  The liens of

21  this creditor shall attach to the proceeds of the sale of the Real Property to the same extent, validity, and

22  priority as they now attach to the Real Property and will continue to attach to the Additional Real

23  Property Collateral. Further, Epps & Coulson, LLP has consented to the sale as demonstrated by the

24  Declaration of Dawn Coulson. Declaration of Dawn Coulson ("Coulson Declaration") ¶4.

25  ///

26  ///

27

28          [6]    As discussed, the amount owed to Bayview is disputed and unknown.

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1       d.    Allco Enterprises Inc. dba Allco Leasing. A U.C.C.-1 financing statement

2   recorded April 14, 2003 by Allco Enterprises, Inc. dba Allco Leasing ("Allco"), and a related U.C.C.-2

3   continuation statement recorded March 31, 2008.  These fillings were against Foasberg Laundry and

4   Cleaners, Inc., Debtor's tenant and affiliated entity, Hilma Foasberg, and James Foasberg and Richard

5   Foasberg, principals of Debtor, and not Debtor.  Vavrek Declaration ¶23(d). Additionally, these filings

6   have lapsed and, therefore, any liens created by them are disputed.  The duration of the perfection of a

7   of a U.C.C.-1 or 2 filing is controlled by California Commercial Code § 9515, which provides:

8       (a) Except as otherwise provided in subdivisions (b), (e), (f), and (g), a filed financing
        statement is effective for a period of five years after the date of filing.

9

10      (b) Except as otherwise provided in subdivisions (e), (f), and (g), an initial financing
        statement filed in connection with a public finance transaction or manufactured home

11      transaction is effective for a period of 30 years after the date of filing if it indicates that
        it is filed in connection with a public finance transaction or manufactured home
        transaction.

12

13      (c) The effectiveness of a filed financing statement lapses on the expiration of the period
        of its effectiveness unless before the lapse a continuation statement is filed pursuant to
        subdivision (d).  Upon lapse, a financing statement ceases to be effective and any

14      security interest or agricultural lien that was perfected by the financing statement
        becomes unperfected, unless the security interest is perfected otherwise. If the security

15      interest or agricultural lien becomes unperfected upon lapse, it is deemed never to have
        been perfected as against a purchaser of the collateral for value.

16

17      (d) A continuation statement may be filed only within six months before the expiration
        of the five-year period specified in subdivision (a) or the 30-year period specified in
        subdivision (b), whichever is applicable.

18

19      (e) Except as otherwise provided in Section 9510, upon timely filing of a continuation
        statement, the effectiveness of the initial financing statement continues for a period of
        five years commencing on the day on which the financing statement would have become

20      ineffective in the absence of the filing. Upon the expiration of the five-year period, the
        financing statement lapses in the same manner as provided in subdivision (c), unless,

21      before the lapse, another continuation statement is filed pursuant to subdivision (d).
        Succeeding continuation statements may be filed in the same manner to continue the

22      effectiveness of the initial financing statement.

23      (f) If a debtor is a transmitting utility and a filed initial financing statement so indicates,
        the financing statement is effective until a termination statement is filed.

24

25      (g) A record of a mortgage that is effective as a financing statement filed as a fixture
        filing under subdivision (c) of Section 9502 remains effective as a financing statement

26      filed as a fixture filing until the mortgage is released or satisfied of record or its
        effectiveness otherwise terminates as to the real property.

27  Cal. Com. Code § 9515.

28      Consequently, the duration of perfection in this instance is five years (California Commercial

1   Code § 9515 (a)) because none of the exceptions enumerated therein are applicable to the circumstances.

2   While the first U.C.C. filing was properly renewed by the recording of the U.C.C.-2 continuation

3   statement, more than five years have elapsed since the filing of the U.C.C.-2 continuation statement and,

4   therefore, the perfection of the lien has lapsed and it is disputed.

5   **V.      ANTICIPATED TAX CONSEQUENCES OF THE SALE**

6          Debtor anticipates no major tax consequences of the proposed sale of the Real Property because

7   Debtor is a partnership and pays no income taxes.

8   **VI.     11 U.S.C. § 363(b)(1) ALLOWS THE DEBTOR-IN-POSSESSION TO SELL PROPERTY**

9   **OF THE ESTATE IN THE ORDINARY COURSE OF BUSINESS WITH THE COURT'S**

10  **APPROVAL AFTER NOTICE AND A HEARING; § 363(f) ALLOWS THE DEBTOR-IN-**

11  **POSSESSION TO SELL ESTATE PROPERTY FREE AND CLEAR OF ANY**

12  **INTEREST IN SUCH PROPERTY PROVIDED THE INTEREST HOLDER CONSENTS**

13  **OR OTHER CONDITIONS APPLY**

14         11 U.S.C. § 363(b)(1) provides that the Trustee (or Debtor-in-Possession pursuant to 11 U.S.C.

15  § 1107)[7] may, following "notice and a hearing" sell "other than in the ordinary course of business,

16  property of the estate . . . ." 11 U.S.C. § 363(b)(1) "'The requirements of section 363(b) protect the

17  creditor's interest in the assets of the estate.'" *240 North Brand Partners, Ltd. v. Colony GFP Partners,*

18  *L.P.* (*In re 240 North Brand Partners, Ltd.*), 200 B.R. 653, 659 (9th Cir. B.A.P. 1996) (quoting *U.S. v.*

19  *Goodstein,* 883 F.2d 1362, 1367 (7th Cir.1989), *cert. denied,* 494 U.S. 1007, 110 S. Ct. 1305, 108 L.

20  Ed.2d 481 (1990) (citation omitted)).  As a result, this Court has "considerable discretion" in deciding

21  whether to approve the sale of estate property by a debtor-in-possession provided the debtor-in-

22  possession provides a "sound business justification."  *Walter v. Sunwest Bank* (*In re Walter*), 83 B.R.

23  14, 17 (9th Cir. B.A.P. 1988) (citations omitted); *accord In re Ernst Home Ctr., Inc.*, 209 B.R. 974, 979

24  (Bankr. W.D. Wa 1997).  Further, the terms of the Plan explicitly indicate that "Debtors have the option

25  to seek Court authority in its reasonable business judgment (for instance if closing the sale will occur

26  more quickly with Court authority or the buyer wants the protection of a Court order authorizing the

27  _____

28         [7]      11 U.S.C. § 1107 states that "a debtor in possession shall have all the rights ... and
powers, and shall perform all the functions and duties ... of a trustee...."

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    sale)." RJN at Exhibit "5" (Plan at Exhibit H at page 7, footnote 5).

2    In addition, the proposed sale must be in "good faith." *In re Wilde Horse Enterprises, Inc.,* 136

3    B.R. 830, 841 (Bankr. C.D. Cal.1991) (citations omitted). "'Good faith' encompasses fair value, and

4    further speaks to the integrity of the transaction. Typical 'bad faith' or misconduct, would include

5    collusion between the seller and buyer, or any attempt to take unfair advantage of other potential

6    purchasers." *Id.* at 842 (citation omitted).

7    Further, 11 U.S.C. § 363(f) allows the Debtor-in-Possession to sell estate property pursuant to

8    § 363(b)(1) "free and clear of any interest in such property of an entity other than the estate," provided

9    that one of five conditions applies:

10    a.    applicable nonbankruptcy law allows a free and clear sale of the intended type of
11          interest;

12    b.    the entity with an interest in the property consents to the sale;

13    c.    the interest is a lien and the price at which the property to be sold "is greater than the
14          aggregate value of all liens on such property";

15    d.    the interest is in "bona fide dispute" or;

16    e.    the entity with an interest in the property could be compelled to accept a monetary
17          payment in a legal or equitable proceeding in lieu of its interest.

18    11 U.S.C. § 363(f)(1)-(5).

19    Rights to sale of the property free and clear are conditioned upon providing adequate protection

20    of the secured creditor. 11 U.S.C. § 363(e).

21    Here, it is clear that sale of the Real Property free and clear is in the best interests of the estate,

22    the lone secured creditor, and the estate's unsecured creditors. 11 U.S.C. § 363(f)(3) provides that the

23    Real Property may be sold free and clear of any interests in the Real Property if "such interest is a lien

24    and the price at which such property is to be sold is greater than the aggregate value of all liens on such

25    property." Using the definition of a secured claim in 11 U.S.C. § 506(a), which "equates such a claim

26    to the value of the collateral securing the claim," the sale price need only exceed the value of the Real

27    Property. *In re Terrace Gardens Park P'ship*, 96 B.R. 707, 712 (Bankr. W.D. Tex. 1989) (citing *In re*

28    *Beker Industries Corp.*, 63 B.R. 474 (Bankr. S.D. N.Y. 1986); *Matter of Rouse*, 54 B.R. 31 (Bankr. W.D.

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    Mo.1985); *In re Hatfield Homes, Inc.*, 30 B.R. 353 (Bankr. E.D. Pa.1983); 11 U.S.C. § 506(a); 2 *Collier*

2    *on Bankruptcy* ¶ 363.07 at pp. 363–31 et seq. (15th ed. 1987)); *accord In re Milford Grp., Inc.*, 150 B.R.

3    904, 906 (Bankr. M.D. Pa. 1992). As discussed herein, the Real Property has numerous environmental

4    and other matters associated with it that reduce its value. However, despite these items, Jeffery Lee

5    Perry has offered more than the fair market price for the Real Property and has agreed to perform all the

6    environmental testing and reports after the sale has closed so that Debtor will not be responsible for it.

7    By Jeffrey Lee Perry agreeing to take the burden of the cost of environmental testing, re-abandoning

8    the oil wells, and otherwise complying with applicable environmental laws, it shows that the sale price

9    offered for the Real Property exceeds the value of the Real Property. Further, due to the length of time

10   and effort taken by numerous brokers to sell the Real Property, it is evident that the offer obtained

11   exceeds the value of the Real Property. Therefore, the sale price exceeds the aggregate value of the liens

12   encumbering the Real Property.

13   Moreover, the proposed sale provides significant adequate protection to Bayview and other

14   creditors. Adequate protection is one of the touchstones of "whether a debtor's proposed action should

15   be approved. Adequate protection in turn focuses on the value of the collateral securing the claim. So

16   long as a creditor's interest is adequately protected, the debtor is permitted to sell property of the estate."

17   *In re Terrace Gardens Park P'ship*, 96 B.R. at 713 (citing 11 U.S.C. § 363(e)). Bayview will be

18   receiving *all* of the net funds obtained from the sale of the Real Property, and as a consequence, the

19   secured creditor will be paid approximately $843,319.30 of the sale proceeds. Upon completion of the

20   sale, Bayview will be paid approximately $843,319.30 on account of its lien and will have a first priority

21   lien on the Additional Real Property Collateral valued at over $1,000,000, which provides a significant

22   equity cushion to Bayview. If Debtors are unsuccessful in their objection to Bayview's claims, the

23   largest claim Bayview will have against the Additional Real Property Collateral after the sale of the Real

24   Property will be a claim of $506,747.83, which is a debt to value ratio of no more than 50.67%, leaving

25   an equity cushion of 49.33%. However, if Debtors are completely successful in their objection to

26   Bayview's claims, Bayview's claim will be reduced to $58,405.72, which is a debt to value ration of no

27   more than 5.84%, leaving an equity cushion of 94.16%. Hence, Bayview's interest is adequately

28   protected.

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    All other claims related to the Real Property (other than the disputed lien of Epps & Coulson,

2    LLP), such as real estate taxes, will be paid upon close of the sale such that the sale is free and clear of

3    their liens because they will be paid in full.

4    **A.    Any Secured Claimant That Does Not Timely Oppose a Proposed Sale of the Real**

5    **Property Is Deemed to Have Consented to the Sale Pursuant to Section 363(f)(2)**

6    As set forth hereinabove, Section 363(f)(2) of the Bankruptcy Code authorizes a sale of estate

7    property free and clear of an interest therein asserted by an entity if such entity consents to the sale. A

8    failure of a secured claimant to timely object to a proposed sale, after receiving proper notice of the sale,

9    is held to be satisfactory consent for the purposes of Section 363(f)(2). *See, e.g., In re R Star Rests.,*

10    *Inc.*, 2010 WL 3329814, at *4 (Bankr. C.D. Cal. June 29, 2010); *In re James*, 203 B.R. 449, 453 (Bankr.

11    W.D. Mo. 1997); *Hargrave v. Twp. of Pemberton (In re Tabone, Inc.)*, 175 B.R. 855, 858 (Bankr. D.

12    N.J. 1994) (citations omitted).

13    Consequently, the failure of any secured claimant to object to the proposed Sale of the Real

14    Property, after receiving proper notice of this Motion to Sell, should be deemed to constitute its consent

15    to the Sale for the purposes of Section 363(f)(2). Therefore, if no objection is filed, this Court should

16    deem the failure to object as consent pursuant to Section 363(f)(2).

17    **B.    Deference to Debtor's Business Judgment**

18    A debtor may sell, outside of the ordinary course of the debtor's business, property of the

19    debtor's estate if the sale transaction is within the reasonable business judgment of the debtor. *E.g.,*

20    *In re Borders Grp., Inc.*, 453 B.R. 459, 473 (Bankr. S.D. N.Y. 2011) (citing *The Official Comm. Of*

21    *Unsecured Creditors of LTV Aerospace and Def. Co. v. LTV Corp. (In re Chateaugay Corp.)*, 973 F.2d

22    141, 144–45 (2d Cir. 1992); *Comm. of Equity Sec. Holders v. Lionel Corp. (In re Lionel Corp.)*, 722

23    F.2d 1063, 1072 (2d Cir. 1983); *In re Global Crossing Ltd.*, 295 B.R. 726, 743 (Bankr. S.D. N.Y.

24    2003)); *In re Buffalo Coal Co.*, 2006 WL 3359585, at *3 (Bankr. N.D. W. Va. Nov. 15, 2006).

25    Bankruptcy courts generally do not interfere with a debtor's exercise of its business judgment. *See, e.g.,*

26    *In re Consol. Auto Recyclers, Inc.*, 123 B.R. 130, 140 (Bankr. D. Me. 1991) (citations omitted); *The Dai-*

27    *Ichi Kangyo Bank, Ltd. v. Montgomery Ward Holding Corp. (In re Montgomery Ward Holding Corp.)*,

28    242 B.R. 147, 153 (D. Del. 1999) (citing *Collier on Bankruptcy* § 363.02 (15th ed.1997)).

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    Here, Debtor has extensively marketed the Real Property for sale and obtained the offer of

2    Jeffery Lee Perry, which is a fair price for the Real Property and provides that Jeffery Lee Perry will

3    perform all aspects of remediation and advance the costs without involvement or expense of Debtor.

4    This Court can have confidence in the reasonableness of the business judgment of Debtor in selecting

5    Jeffery Lee Perry for the purchase of the Real Property and should defer to this business judgment

6    because Debtor extensively marketed the Real Property and obtained an offer that provides that the

7    buyer will perform all aspects of remediation and advance the costs, which is highly unusual but

8    necessary for Debtor to consummate a sale. Additionally, the auction will allow for any higher or better

9    offer for the purchase of the Real Property to be obtained at the hearing on the Motion to Sell. Finally,

10    the sale of the Real Property will allow the debt to Bayview to be significantly reduced, thereby

11    reducing the debt service on this loan and increasing Debtor's cash flow so it can service the remaining

12    loan to Bayview and pay all other creditors. Therefore, this Court should authorize the Sale of the Real

13    Property.

14        **C.    Fairness of Sale Price**

15        Any successful bid for the Real Property, including the offer of the Buyer, should be deemed a

16    fair sale price for the Real Property. The Ninth Circuit Court of Appeals has held "that the price paid

17    at a commercially reasonable sale is the best evidence of [an asset's] value." *Romley v. Sun Nat'l Bank*

18    (*In re Two S Corp.*), 875 F.2d 240, 243 (9th Cir. 1989). The fair market price of an asset is the amount

19    at which property would be sold as between a willing buyer and willing seller. *Id.* at 244 & n.4 (quoting

20    *Black's Law Dictionary* 536 (5th ed. 1979) ("By definition, when there has been a fair sale the purchase

21    price reflects the fair market value of the asset.").

22        Here, prior marketing of the Real Property, the amount of the offer of Jeffery Lee Perry, Jeffery

23    Lee Perry's agreement to perform all aspects of remediation and advance the costs after the sale is

24    completed, and the allowing for an auction for higher and better offers show that the sale price for the

25    Real Property is fair. This sale process provides the best assurance possible under the circumstances

26    of this case that Debtor is obtaining a far price for the Sale of the Real Property. Additionally, even

27    without overbid, Jeffery Lee Perry's offer represents a substantially high offer in that it provides that

28    Jeffery Lee Perry will take the Real Property "as is" and preform any and all aspects of remediation and

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1   advance the costs after the sale closes. Accordingly, this Court should determine that the sale price for

2   the Real Property represents fair recovery for Debtor's estate from the Sale of the Real Property, and

3   thus a reasonable exercise of Debtor's business judgment.

4       **D.    <u>Adequacy of Notice of the Sale</u>**

5           Debtor seeks an order, with appropriate findings of the Court, approving the adequacy of notice

6   given to creditors and parties-in-interest of the hearing on the Motion.  Because Debtor seeks to have

7   this Motion heard on an emergency basis, Debtor indicates that the Notice of Motion and Notice of Sale

8   will be served on all creditors, all parties in interest, and any party who expressed serious interest in

9   purchasing the Real Property.

10  **VII.    DISTRIBUTION OF PROCEEDS**

11          The proceeds of the sale shall be distributed as follows:

12              a.        <u>Payment of Costs of Sale.</u>

13                  i.        <u>Payment of Broker.</u>  By the Motion, Debtor seeks authority to pay a six

14  percent (6%) commission to Pacific West Associates and Edward Renteria (collectively "Broker"),

15  whose address is 2155 Bellflower Blvd., Long Beach, CA 90815, from the purchase price of the Real

16  Property, resulting in a commission of $56,100 if the purchase price is $935,000. The agreement

17  between Debtor and Broker provides that Broker is to sell the Real Property on the basis that it will

18  receive no compensation except upon the consummation of any sale of the Real Property, in which event

19  Broker will receive a real estate broker's commission in an amount equal to six percent (6%) of the total

20  purchase price for the Real Property.  Such commission may be shared with any other real estate broker

21  involved in the sale of the Real Property on behalf of an overbidder at the sale who is not Jeffery Lee

22  Perry, as is customary in the real estate industry, subject to disclosure to this Court. In the event that the

23  Real Property is sold on an overbid to a buyer not procured by Broker, Broker will nonetheless be

24  entitled to receive a real estate broker's commission equivalent to six percent (6%) of the accepted sales

25  bid for services rendered and expenses incurred in representing Debtor in marketing the Real Property

26  and any commission payable to the broker procuring the Successful Bidder shall be the responsibility

27  of Broker, as is customary in the real estate industry, subject to disclosure to this Court.  At the hearing

28  on the Motion, Broker, as well as any broker who may have procured the Successful Bidder, will

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

1    disclose the dollar amount of the commission, based on the purchase price of the Real Property, and the

2    identities of any other broker sharing in the commission, so that it may be approved by the Court at the

3    hearing on the Motion.  Debtor seeks authority to pay these amounts from the purchase price for the

4    Real Property without seeking further approval by the Court.

5                    ii.    Payment of Escrow and Title.  By the Motion, Debtor seeks authority to

6    pay its own portion (one half) of the Escrow Fee and for owner's title insurance from the purchase price

7    of the Real Property. These fees and expenses are estimated to be $3,184.50. Debtor seeks authority to

8    pay these amounts from the purchase price for the Real Property without seeking further approval by

9    the Court.

10                    iii.    Transfer Costs.  By the Motion, Debtor seeks authority to pay the County

11    transfer tax or transfer fee and the City transfer tax or transfer fee from the purchase price of the Real

12    Property.  Pursuant to the Purchase Agreement, Debtor shall pay the County transfer tax or transfer fee

13    and the City transfer tax or transfer fee. This fee is estimated to be $1,028.50.  Debtor seeks authority

14    to pay these amounts from the purchase price for the Real Property without seeking further approval by

15    the Court.

16                    iv.    Real Property Taxes.  By the Motion, Debtor seeks authority to pay unpaid

17    real estate taxes owing to the Los Angles County Tax Collector, estimated in the amount of $861.31.

18    Debtor seeks authority to pay these amounts from the purchase price for the Real Property without

19    seeking further approval by the Court.

20                    v.    Legal Fees.  Epps & Coulson, LLP represented Debtor for the purpose of

21    obtaining the purchaser, negotiating the terms of the Purchase Agreement, and otherwise assisting

22    Debtors to obtain the offer currently before the Court. This was necessary given the environmental

23    contamination of the Real Property and the need to re-abandon two oil wells on the Real Property. While

24    Epps & Coulson, LLP is asserting $25,000 for these fees, Epps & Coulson significantly reduced its fee

25    to try to close the sale. Coulson Declaration ¶5.  Debtor seeks authority to pay these amounts from the

26    purchase price for the Real Property without seeking further approval by the Court.

27                    vi.    Miscellaneous Disbursements.  Debtor also seeks authority to pay the

28    Natural Hazard Disclosure Report in the amount of approximately $129.00, the Fence Removal fee in

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

F:\U A\clients\ACTIVE\R&J Limited Partnership - 1063\Pleadings\Sale Motion Vacant Lot 2019\MTN 4 SALE v4 vmh.wpd

THIS DOCUMENT PREPARED ON RECYCLED PAPER

1   the amount of approximately $2,000, the fee for removal of personal property from the Real Property

2   in the amount of approximately $2,500, and any amounts owing to the Franchise Tax Board in the

3   amount of approximately $2,600. Debtor seeks authority to pay these amounts from the purchase price

4   for the Real Property without seeking further approval by the Court.

5             vi.   <u>Remaining Proceeds to Bayview.</u> After deduction of the items set forth

6   above, which shall be paid at the close of sale and total no more than $91,680.70, the estimated

7   remainder of the proceeds of the sale is the sum of $843,319.30, all of which will be paid to Bayview

8   on account of its secured debt. Debtor seeks authority to pay these amounts from the purchase price for

9   the Real Property without seeking further approval by the Court.

10      A copy of the estimated closing statement is attached to the Vavrek Declaration as Exhibit "7".

11   Vavrek Declaration ¶24.

## VIII.  <u>CONCLUSION</u>

13      In sum, the sale is the best imaginable outcome for the estate with respect to the Real Property.

14   The offer is the only quality offer received on the property in its almost five years on the market.

15   Further, the sale if approved, will result in a betterment of Bayview's secured status, and it will enjoy

16   adequate protection. Therefore, for good cause appearing, Debtor respectfully requests that this Court

17   grant the Motion and (1) authorize the sale of the Real Property, free and clear of all claims, liens and

18   interests pursuant to Section 363(f) of the Bankruptcy Code; (2) authorize the distribution of proceeds;

19   and (3) grant to Debtor such other and further relief as this Court deems just and appropriate under the

20   facts and circumstances of this case.

21                       Respectfully submitted,

22                       HABERBUSH & ASSOCIATES, LLP

23

24   Dated: May 8, 2019             By:_____

25                       VANESSA M. HABERBUSH, ESQ., Attorneys
                          for Debtor and Debtor-in-Possession

26

27

28

HABERBUSH & ASSOCIATES, LLP
ATTORNEYS AT LAW
444 WEST OCEAN BOULEVARD, SUITE 1400
LONG BEACH, CA 90802

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**444 West Ocean Boulevard, Suite 1400, Long Beach, CA 90802**

A true and correct copy of the foregoing document entitled (*specify*):  **MOTION FOR ORDER AUTHORIZING THE SALE OF THE ESTATE'S INTERESTS IN REAL PROPERTY LOCATED AT 675 EAST WARDLOW RD., LONG BEACH, CA, FREE AND CLEAR OF ALL CLAIMS, LIENS, AND INTERESTS PURSUANT TO 11 U.S.C. § 363** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **May 8, 2019**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below

☒ Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On **May 8, 2019** I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**Interested Party -**
David J. Pasternak
PASTERNAK & PASTERNAK
A Law Corporation
1875 Century Park East, Suite 2200
Los Angeles, CA 90067-2523

☐ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) _____, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| May 8, 2019 | Alexander S. Bostic | |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                    **F 9013-3.1.PROOF.SERVICE**

**Dawn M Coulson, Epps & Coulson, LLP**
dcoulson@eppscoulson.com, cmadero@eppscoulson.com

**Alan W Forsley, Interested Party**
alan.forsley@flpllp.com, awf@fkllawfirm.com,awf@fl-lawyers.net,addy.flores@flpllp.com

**David R Haberbush, Representing Debtor**
dhaberbush@lbinsolvency.com, ahaberbush@lbinsolvency.com, abostic@lbinsolvency.com, vhaberbush@lbinsolvency.com,
haberbush.assistant@gmail.com, jborin@lbinsolvency.com, lbogard@lbinsolvency.com

**Vanessa M Haberbush, Representing Debtor**
vhaberbush@lbinsolvency.com, dhaberbush@lbinsolvency.com, ahaberbush@lbinsolvency.com, abostic@lbinsolvency.com,
haberbush.assistant@gmail.com, jborin@lbinsolvency.com, lbogard@lbinsolvency.com

**Kari A Keidser, Representing James Foasberg**
kkeidser@gmail.com

**Raffi Khatchadourian, Representing Butler Capital**
raffi@hemar-rousso.com

**Leslie M Klott, Representing Ocwen Loan Servicing, LLC**
bankruptcy@zievelaw.com

**Dare Law, Representing US Trustee's Office**
dare.law@usdoj.gov, ron.maroko@usdoj.gov; Alvin.mar@usdoj.gov

**Ron Maroko, Representing US Trustee's Office**
ron.maroko@usdoj.gov

**Edward G Schloss, Representing Bayview Loan Servicing, LLC**
egs2@ix.netcom.com

**John D Schlotter, Representing PennyMac Loan Services, LLC**
ecfmail@aclawllp.com

**Timothy J Silverman, Representing PennyMac Holdings, LLC**
tsilverman@scheerlawgroup.com

**United States Trustee (LA)**
ustpregion16.la.ecf@usdoj.gov

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.